**IT IS ORDERED as set forth below:**



Date: September 1, 2022

_____
**Wendy L. Hagenau
U.S. Bankruptcy Court Judge**

_____

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| IN RE:<br><br>BRIAN ELVIN WILDER, JR.,<br><br>Debtor. | Case No. 21-58597-WLH<br><br>Chapter 7 |
| SUMMIT HOSTING, LLC,<br><br>Plaintiff,<br><br>v.<br><br>BRIAN ELVIN WILDER, JR.,<br><br>Defendant. | Adversary Proceeding No. 22-5066 |

**ORDER GRANTING IN PART AND DENYING IN PART
MOTION FOR DEFAULT JUDGMENT**

1

**THIS MATTER** is before the Court on Plaintiff's Motion for Default Judgment (Doc. No. 8) (the "Motion") determining nondischargeability of an arbitration award and state court judgment. This matter is a core proceeding pursuant to 28 U.S.C. §§ 157(b)(2)(I), and the Court has jurisdiction over the proceeding pursuant to 28 U.S.C. §§ 1334 and 157.

## I. Introduction

Plaintiff filed the Complaint on March 30, 2022 seeking to determine a confirmed arbitration award and final judgment entered against Defendant and in favor of Plaintiff for violations of the Computer Fraud & Abuse Act ("CFAA") and the Stored Communication Act ("SCA"), breach of contract, gross negligence, and fraud is nondischargeable pursuant to sections 523(a)(2), (a)(4), and (a)(6) of the Bankruptcy Code. A summons was issued, and Plaintiff certified Defendant's counsel agreed to accept service of process on behalf of Defendant and that a copy of the Complaint and a summons were sent, by United States Mail, to counsel on April 4, 2022.

Plaintiff requested entry of default for Defendant's failure to file an answer or otherwise respond to the Complaint as provided by Bankruptcy Rule 7012. On June 17, 2022, the Clerk entered default against Defendant pursuant to Bankruptcy Rule 7055. Plaintiff filed the Motion on July 21, 2022. Defendant failed to file a response; consequently, the Motion is deemed unopposed pursuant to Local Rule 7007-1(c).

Entry of default judgment under Fed. R. Bankr. P. 7055 is discretionary. In re Alam, 314 B.R. 834, 837 (Bankr. N.D. Ga. 2004). "[A] defendant's default does not in itself warrant the court in entering a default judgment. There must be a sufficient basis in the pleadings for the judgment entered." Nishimatsu Constr. Co., Ltd. v. Houston Nat'l Bank, 515 F.2d 1200, 1206 (5th Cir. 1975). A default only admits well-pled allegations of fact and does not admit

Case 22-05066-wlh    Doc 9    Filed 09/01/22    Entered 09/01/22 11:19:56    Desc Main
Document      Page 3 of 19

conclusions of law. Id. Only facts established by the pleadings can support a default judgment. Alan Neuman Prods., Inc. v. Albright, 862 F.2d 1388, 1392 (9th Cir. 1988).

In determining whether the allegations in a complaint are sufficient, the Supreme Court has provided guidance in both Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007), and Ashcroft v. Iqbal, 556 U.S. 662 (2009). In these cases, the Supreme Court explained, while "detailed factual allegations" are not required, the pleading must offer more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." Twombly, 550 U.S. at 555. Instead, the complaint must contain "enough facts to state a claim to relief that is plausible on its face." Id. at 570.

## II. Facts

Based on the well plead allegations in the Complaint, the Court finds as follows: Plaintiff is a provider of cloud-based QuickBooks hosting and Sage hosting in the United States and Canada. Defendant was a Senior Network Engineer at Plaintiff responsible for architecting, maintaining, and securing Plaintiff's IT infrastructure.

Beginning in March 2019, while employed by Plaintiff, Defendant entered into a series of contracts with eSentire for cyber-security services without Plaintiff's knowledge or approval. The contracts purported to obligate Plaintiff to pay sums annually in exchange for kickbacks directly to Defendant. Defendant signed the agreements without Plaintiff's authorization and then concealed the agreements from Plaintiff. Defendant hid and falsified invoices; created rules to block and delete email communications from eSentire to Plaintiff regarding the agreements and related invoices; and locked out network engineers from administrative privileges to prevent them from discovering Defendant's actions.

In his capacity as Senior Network Engineer, Defendant received requests from remote users to log onto Plaintiff's IT systems. On January 18, 2020, Defendant let a ransomware cyber-attacker, posing as an employee of Plaintiff working remotely, into Plaintiff's IT infrastructure system. The cyber-attacker locked Plaintiff out of its own IT infrastructure and demanded $150,000 in ransom to unlock the system, which Plaintiff paid.

While investigating the ransomware attack, Plaintiff discovered it had not been receiving communications from eSentire and learned Defendant had entered into separate contracts with eSentire and took various actions to conceal the agreements. Plaintiff ultimately paid eSentire $305,264.83 to settle the unpaid invoices.

On June 15, 2020, Plaintiff filed a demand for arbitration and complaint for binding arbitration against Defendant alleging he violated the CFAA intentional access provision, violated the SCA, breached his employment contract with Plaintiff, and committed gross negligence and fraud. The arbitrator entered a final award on June 4, 2021 against Defendant on all counts for compensatory damages in the amount of $447,373.67, for punitive damages in the amount of $450,000.00, and for attorneys' fees and costs in the amount of $90,169.18 ("Final Award"). The Final Award is based on Defendant's liability on all counts of the complaint and does not allocate damages to specific counts. The Final Award was confirmed by the Superior Court of Forsyth County on September 13, 2021, and judgment was entered against Defendant on all counts for the amounts listed in the Final Award ("Superior Court Order").

Defendant filed for relief under Chapter 7 of the Bankruptcy Code on November 17, 2021. On March 30, 2022, Plaintiff filed the Complaint seeking a determination the amounts set forth in the Superior Court Order are nondischargeable.

### III. Analysis

    a. Nondischargeability Standard

A presumption exists all debts owed by the debtor are dischargeable unless the party contending otherwise proves nondischargeability by a preponderance of the evidence. 11 U.S.C. § 727(b); Grogan v. Garner, 498 U.S. 279, 287-88 (1991); St. Laurent v. Ambrose (In re St. Laurent), 991 F.2d 672, 680 (11th Cir. 1993). The purpose of this "fresh start" is to protect the "honest but unfortunate" debtors. U.S. v. Fretz (In re Fretz), 244 F.3d 1323, 1326 (11th Cir. 2001). Exceptions to discharge are, therefore, narrowly construed against the creditor and in favor of the debtor. Equitable Bank v. Miller (In re Miller), 39 F.3d 301 (11th Cir. 1994); St. Laurent, 991 F.2d at 680. Plaintiff contends the obligations in the Superior Court Order are nondischargeable pursuant to sections 523(a)(2)(A), (a)(4), and (a)(6).

Section 523(a)(2)(A) covers "actual fraud" as well as false pretenses and representations. To prove a debt was incurred through false representation under section 523(a)(2)(A), a creditor must show by a preponderance of the evidence: (1) that the debtor made a false representation with the intent to deceive the creditor; (2) that the creditor relied on the representation; (3) that the reliance was justified; and (4) that the creditor sustained a loss as a result of the representation. Hebbard v. Camacho (In re Camacho), 411 B.R. 496, 505 (Bankr. S.D. Ga. 2009) (citing In re Bilzerian, 100 F.3d 886, 892 (11th Cir.1996); In re St. Laurent, 991 F.2d 672, 676 (11th Cir.1993)). Fraud is a generic term which includes "all surprise, trick, cunning, dissembling, and any unfair way by which another is cheated." Burke v. Burke, (In re Burke), 405 B.R. 626, 646 (Bankr. N.D. Ill. 2009). "Although 'fraud' connotes deception or trickery generally, the term is difficult to define more precisely." Husky Int'l Elecs., Inc. v. Ritz, 578 U.S. 355, 360 (2016). The key element of a nondischargeability claim for actual fraud under

5

section 523(a)(2)(A) is the scienter requirement. The underlying conduct must involve "moral turpitude or intentional wrong." Id. Thus, a debt arising from reckless conduct is not actual fraud and is dischargeable under section 523(a)(2)(A). Finally, false pretenses is defined as "a series of events, activities or communications which, when considered collectively, create a false and misleading set of circumstances, or false and misleading understanding of a transaction, in which a creditor is wrongfully induced by the debtor to transfer property or extend credit to the debtor...." In re Quinn, 492 B.R. 341, 345 (Bankr. N.D. Ga. 2013).

Plaintiff also alleges Defendant committed fraud or defalcation while acting in a fiduciary capacity within the meaning of section 523(a)(4). For a debt to be dischargeable pursuant to section 523(a)(4) based on fraud or defalcation, the debtor must have been acting as a fiduciary in accordance with an express or technical trust that existed prior to the wrongful act. In re Newton v. Lemmons (In re Lemmons), 2005 WL 6487216, * 4 (Bankr. N.D. Ga. Dec. 20, 2005) (citation omitted). A technical trust has been defined by the Eleventh Circuit as "an express trust created by statute or contract that imposes trust-like duties on the defendant and that pre-exists the alleged defalcation," as opposed to constructive or resulting trusts. Parker v. Ferland (In re Ferland), 2010 WL 2600588, at *3 (Bankr. M.D. Ga. June 21, 2010) (citation omitted); see also Guerra v. Fernandez-Rocha (In re Fernandez-Rocha), 451 F.3d 813, 816 (11th Cir. 2006). "Mere friendship does not meet this standard, nor does an ordinary business relationship." In re Ferland, 2010 WL 2600588, at *3 (citation omitted); see also Spring Valley Produce, Inc., v. Nathan Aaron Forrest, Case No. 21-12133, at *19 (11th Cir. Aug. 31, 2022) ("the fiduciary relationship must have (1) a trustee, who holds (2) an identifiable trust res, for the benefit of (3) an identifiable beneficiary or beneficiaries[;]…the fiduciary relationship must define sufficient trust-like duties imposed on the trustee with respect to the trust res and beneficiaries to create a

6

technical trust[; and]…"the debtor must be acting in a fiduciary capacity before the act of fraud or defalcation creating the debt.").

Finally, Plaintiff asserts the obligations under the Superior Court Order are nondischargeable pursuant to section 523(a)(6), which provides a debt is nondischargeable if it arises from "willful and malicious injury by the debtor to another entity or to the property of another entity." 11 U.S.C. § 523(a)(6). Under section 523(a)(6), a creditor must prove a willful and malicious injury. Willfulness is "an intentional or deliberate act, which is not done merely in reckless disregard of the rights of another." Maxfield v. Jennings (In re Jennings), 670 F.3d 1329, 1334 (11th Cir. 2012) (citations omitted). Reckless behavior does not satisfy the willfulness requirement of § 523(a)(6). In re Basl, 2018 WL 1886571, at *5 (Bankr. E.D. Va. Apr. 18, 2018). The debtor, through his acts, must have actually intended the *injury*, "not merely [taken] a deliberate or intentional *act* that leads to injury." Kawaauhau v. Geiger, 523 U.S. 57, 61 (1998) (emphasis in original). The plaintiff must show the debtor "had a subjective motive to inflict injury or believed his conduct was substantially certain to cause injury." Hot Shot Kids, Inc. v. Pervis (In re Pervis), 512 B.R. 348, 376 (Bankr. N.D. Ga. 2014). The debtor's subjective intent may be inferred from surrounding circumstances. Id. "'Malicious' means 'wrongful and without just cause or excessive even in the absence of personal hatred, spite or ill-will.'" Id. (citation omitted). Reckless conduct resulting in injury and characterized by a complete lack of care or conscious indifference to the result is not sufficient to meet the required legal standard. In re Bryan, 2019 WL 654168, at *2 (Bankr. N.D. Ga. Feb. 15, 2019).

    b. Collateral Estoppel

Plaintiff contends the Superior Court Order entered against Defendant is binding on Defendant and establishes the debt is nondischargeable. The doctrine of collateral estoppel seeks

to prevent the re-litigation of issues previously contested and determined by a valid and final judgment in another court. Lemmons, 2005 WL 6487216. The doctrine of collateral estoppel applies to nondischargeability proceedings. Id. (citing Grogan, 498 U.S. at 284 n.11). When reviewing a judgment under the doctrine of collateral estoppel, a federal court must accord the judgment the same preclusive effect as it would be given under the law of the state in which the judgment was rendered. Lewis v. Lowery (In re Lowery), 440 B.R. 914, 921 (Bankr. N.D. Ga. 2010).

This Court must, therefore, turn to Georgia law to determine the preclusive effect of the Superior Court Order against Defendant. Id. (citations omitted). A typical civil proceeding consists of two elements, liability and damages, while an adversary proceeding respecting dischargeability consists of three elements, liability, damages, and dischargeability. Id. Although a non-bankruptcy court can determine liability and damages, a bankruptcy court must determine dischargeability. Id. Thus, a bankruptcy court can apply collateral estoppel on the issue of liability or the issue of liability and damages to the extent those issues were litigated in the prior action, but the bankruptcy court must still determine on the basis of those proven facts whether those acts come within the dischargeability sections of the Bankruptcy Code. Id.

Under Georgia law, a party may only assert the doctrine of collateral estoppel when the following elements have been satisfied: (1) identity of the parties is the same; (2) identity of the issues is the same; (3) actual and final litigation of the issue in question occurred; (4) the adjudication was essential to the earlier action; and (5) the parties had a full and fair opportunity to litigate the issues in question. Id. at 921-22.

There is no dispute Plaintiff and Defendant were parties to the arbitration and the Superior Court Order, so the parties are identical, and the first element of collateral estoppel is

satisfied. The matters leading to judgment were actually litigated, because Plaintiff filed a complaint for binding arbitration, and the arbitrator ruled on the request and entered a Final Award. Further, the validity of the Final Award was confirmed by the Superior Court. Lowery, 440 B.R. at 923 (citing Lusk v. Williams (In re Williams), 282 B.R. 267, 272 (Bankr. N.D. Ga. 2002)); Community State Bank v. Strong, 651 F.3d 1241, 1267–68 (11th Cir. 2011)); see also In re Knight, 574 B.R. 800, 809 (Bankr. N.D. Ga. 2017) (arbitration awards may be given preclusive effect). The fact Defendant chose not to participate in the arbitration or the Superior Court proceeding does not negate the actually litigated element as Georgia recognizes a default judgment as a judgment on the merits entitled to preclusive effect. In re Dowd, 616 B.R. 212, 222 (Bankr. N.D. Ga. 2020). No issues were raised regarding notice to Defendant, and the arbitration award says Defendant "has refused to participate in this proceeding in any way." (Doc. No. 1 Ex. 1 at 2.) The issues decided by the Superior Court Order were also essential to the Superior Court Order because they "necessarily had to be decided in order for the previous judgment to have been rendered.'" Allen v. Morrow (In re Morrow), 508 B.R. 514, 522 (Bankr. N.D. Ga. 2014). And, finally, Defendant has not disputed that he had a "full and fair opportunity" to litigate the issues. In re Abernathy, 2019 WL 1489661, at *7 n.5 (Bankr. N.D. Ga. Apr. 1, 2019) (the inquiry under the full and fair opportunity prong is whether the party had adequate notice of the issue and was afforded the opportunity to participate in its determination).

As to the identity of the issues, the Superior Court Order was based on violations of the CFAA, violations of the SCA, breach of contract, gross negligence, and fraud. The Court must compare the necessary elements of these causes of action to the elements of nondischargeability to determine which issues are the same.

The elements of fraud under Georgia law are (1) false representation or omission of a material fact, (2) scienter, (3) intention to induce to act or refrain from acting, (4) justifiable reliance, (5) damages. Wilson Family Foods, Inc. v. Brown (In re Brown), 457 B.R. 919, 924 n.1 (Bankr. M.D. Ga. 2011) (citing Wolf v. Middleton, 305 Ga. App. 784, 788 (2010)). The requirements for establishing "a fraud claim under Georgia law [are] sufficiently identical to the elements require[d] for a showing of fraud pursuant to [section] 523(a)(2)(A)," to find an identity of issues. Lowery, 440 B.R. at 924.

The CFAA intentional access provision requires finding the defendant (1) accessed a "protected computer," (2) without authorization or exceeding such authorization that was granted, (3) "knowingly" and with "intent to defraud," (4) thereby furthering the intended fraud and obtaining anything of value, and (5) causing a loss to one or more persons during any one-year period aggregating at least $5,000 in value. 18 U.S.C.A. § 1030(a)(4);[1] SMH Enterprises, L.L.C. v. Krispy Krunchy Foods, L.L.C., 2021 WL 1226411, at *4 (E.D. La. Apr. 1, 2021), reconsideration denied, 2021 WL 2853105 (E.D. La. July 8, 2021). The elements required to establish a violation of the CFAA have been held to be the same as those necessary to prove a willful and malicious injury under section 523(a)(6) so as to find an identity of issues. See TracFone Wireless, Inc. v. Hernandez, 196 F. Supp. 3d 1289, 1305 (S.D. Fla. 2016).

In order to state a claim under the SCA, a plaintiff must establish two elements: (1) the defendant "intentionally access[ed] without authorization a facility through which an electronic communication service is provided" or "intentionally exceed[ed] an authorization to access that facility," and (2) the defendant "obtain[ed], alter[ed], or prevent[ed] authorized access to a wire

---

[1] The section provides "Whoever . . . knowingly and with intent to defraud, accesses a protected computer without authorization, or exceeds authorized access, and by means of such conduct furthers the intended fraud and obtains anything of value, unless the object of the fraud and the thing obtained consists only of the use of the computer and the value of such use is not more than $5,000 in any 1-year period[.]" 18 U.S.C.A. § 1030(a)(4).

10

or electronic communication while it is in electronic storage in such system." Snow v. DirecTV, Inc., 450 F.3d 1314, 1321 (11th Cir. 2006) (quoting 18 U.S.C. § 2701(a)) (internal quotation marks omitted). An intent to injure or defraud is not an express element of an SCA violation. So the elements required to establish a violation of the SCA are not the same as those necessary to establish nondischargeability under sections 523(a)(2)(A) or (a)(6)

"The elements for a breach of contract claim in Georgia are the (1) breach and the (2) resultant damages (3) to the party who has the right to complain about the contract being broken." Bates v. JPMorgan Chase Bank, NA, 768 F.3d 1126, 1130 (11th Cir. 2014) (citing Norton v. Budget Rent A Car System, Inc., 307 Ga. App. 501, 502 (2010); O.C.G.A. § 13–6–1). "[A] claim for relief sounding in breach of contract…is not sufficient to supply the necessary factual basis to support a legal determination of nondischargeability." In re Raccuglia, 464 B.R. 477, 483 (Bankr. N.D. Ga. 2011).

A negligence claim contains four essential elements: "a duty, a breach of that duty, causation, and damages." Collins v. Athens Orthopedic Clinic, P.A., 837 S.E.2d 310, 312 (Ga. 2019). Gross negligence involves a higher degree of fault than ordinary negligence: it requires the absence of "slight diligence," characterized as the "degree of care which every man of common sense, however inattentive he may be, exercises under the same or similar circumstances." O.C.G.A. § 51-1-4; Williams v. Ethicon, Inc., 2021 WL 857747, at *4 (N.D. Ga. Mar. 8, 2021). The requirements for gross negligence are not identical to the elements required to prove nondischargeability pursuant to section 523(a)(2), (a)(4), or (a)(6), because, inter alia, the elements of intent to injure or intent to defraud are not required. See Raccuglia, 464 B.R. at 483; In re Jacobs, 582 B.R. 654, 669 (Bankr. W.D.N.C. 2017).

11

The Court concludes the Defendant is collaterally estopped from relitigating issues decided in the Final Award and the Superior Court Order to the extent they are the same as the issues to be decided in this adversary proceeding. The judgement for Defendant's liability for fraud and for a violation of the CFAA intentional access provision is binding on this Court in determining the dischargeability of debts arising from such liability. However, an identity of issues does not exist as to the elements of the SCA violation, breach of contract, and gross negligence claims on the one hand and the nondischargeability grounds on the other.

    c. Nondischargeability of Plaintiff's Claim

Plaintiff's claim is based on Defendant's conduct, which can be broken down into two categories: 1) Defendant's actions entering into the unauthorized agreements in exchange for kickbacks, concealing the agreements, deleting communications, and locking out network engineers to prevent them from uncovering his scheme (the "Contract Scheme") and 2) permitting an unauthorized ransomware cyber-attacker into Plaintiff's IT infrastructure system (the "Cyber-Attacker Access").

    i. Contract Scheme

The well pled facts relating to the Contract Scheme and collateral estoppel set forth a basis of nondischargeability pursuant to sections 523(a)(2)(A) and 523(a)(6).

    1. 523(a)(2)(A)

The well pled facts in the Complaint, together with the finding of liability for fraud by the Superior Court, establish Defendant created a scheme to induce Plaintiff to enter contracts so Defendant could obtain kickbacks. His conduct included false representations, intentional conduct, and scienter so as to constitute fraud. First, the elements of state law fraud are the same as those for fraudulent representations under section 523(a)(2)(A), Lowery, 440 B.R. at 924, and

12

the Superior Court has already entered judgment against Defendant for fraud. Further, the Complaint sets out many specific examples of fraudulent representations in ¶226(g)—(m) of the Complaint which, together with the "wrongful acts" set out in ¶227(a)—(i) of the Complaint, show that the representations were made with intent to defraud and to induce Plaintiff to act (or refrain from acting). The Complaint also establishes that Plaintiff reasonably relied on the representations and that Plaintiff suffered damages by paying the invoices generated through the fraud, among other costs. Defendant's conduct relating to the Contract Scheme falls within section 523(a)(2)(A). The debt resulting from the Contract Scheme is therefore nondischargeable.

2. 523(a)(4)

Plaintiff alleges Defendant committed fraud or defalcation while acting in a fiduciary capacity because Defendant held himself out as a fiduciary of Plaintiff when he entered into the unauthorized agreements. Plaintiff, however, has not alleged an express or technical trust and there is no basis to impose a fiduciary duty on Defendant. The absence of a fiduciary duty eliminates the possibility of any debt relating to the Contract Scheme being nondischargeable as arising from fraud or defalcation while acting in a fiduciary capacity under section 523(a)(4). Ellis Astin Grading Co. v. Hornyak (In re Hornyak), 2009 WL 6499325 (Bankr. N.D. Ga. Dec. 29, 2009). Accordingly, the allegations relating to the Contract Scheme do not support a finding of fraud or defalcation while acting in a fiduciary capacity within the meaning of section 523(a)(4).

3. 523(a)(6)

Defendant's actions relating to the Contract Scheme support a finding of nondischargeability under section 523(a)(6). The well-pled allegations in the Complaint, together

with the finding of liability under the CFAA intentional access provision, establish Defendant willfully and maliciously injured Plaintiff, causing damage. Defendant intentionally entered into unauthorized contracts with eSentire and hid them from his employer. These contracts were substantially certain to cause injury to Plaintiff because Plaintiff was liable on them. Further, the judgement under the CFAA establishes Defendant's intent to defraud Plaintiff, which shows his conduct was wrongful and without just cause. Defendant's actions in blocking and deleting communications and locking out engineers to conceal his actions demonstrates he was aware his conduct was wrongful. Defendant's actions were not justifiable, even when viewed in the most favorable light. Based on the facts alleged, and the facts necessarily found in the Superior Court Order, the Court finds this conduct meets the willful and malicious standard. See TracFone Wireless, Inc., 196 F. Supp. 3d at 1305 (the elements required to establish a violation of the CFAA are sufficiently the same as those necessary to prove nondischargeability pursuant to section 523(a)(6)).

### ii. Cyber-Attacker Access

Plaintiff also alleges Defendant gave an unauthorized ransomware cyber-attacker access to its systems. Plaintiff contends Defendant's actions were at least reckless and/or grossly negligent. Defendant's conduct relating to the Cyber-Attacker Access does not support a finding of nondischargeability pursuant to section 523(a)(2)(A), (a)(4), or (a)(6).

### 1. 523(a)(2)(A)

Plaintiff contends Defendant's conduct relating to the Cyber-Attacker Access was reckless and/or grossly negligent. Plaintiff does not allege Defendant acted with the requisite scienter when he permitted the cyber-attacker into Plaintiff's IT infrastructure system for a finding of actual fraud under section 523(a)(2)(A). Further, the allegations relating to the Cyber-

14

Attacker Access do not relate to representations or communications that would constitute false representations and/or false pretenses under section 523(a)(2)(A).

### 2. 523(a)(4)

Plaintiff alleges Defendant committed fraud or defalcation while acting in a fiduciary capacity when he permitted the Cyber-Attacker Access because Defendant held himself out as a fiduciary of Plaintiff. As explained above, Plaintiff has not alleged an express or technical trust, and the absence of a fiduciary duty eliminates the possibility of any debt relating to the Cyber-Attacker Access being nondischargeable as arising from fraud or defalcation while acting in a fiduciary capacity under section 523(a)(4).

### 3. 523(a)(6)

Finally, Plaintiff contends Defendant was reckless in granting the Cyber-Attacker Access. Conduct resulting in injury and characterized by a complete lack of care or conscious indifference to the result is not sufficient to meet the section 523(a)(6) standard. To establish willfulness, Defendant must have actually intended the injury to Plaintiff, not simply intended the act. The Complaint does not allege Defendant acted with the requisite intent or substantial certainty to injure Plaintiff when he recklessly permitted the unauthorized user into the system. The allegations relating to Cyber-Attacker Access therefore do not support a finding of nondischargeability pursuant to section 523(a)(6).

### 4. Conclusion as to Cyber Attacker Access

Defendant may have been grossly negligent or reckless when he let a cyber-attacker into Plaintiff's IT infrastructure. But his conduct relating to the Cyber-Attacker Access does not establish a basis for nondischargeability pursuant to 523(a)(2)(A), (a)(4), or (a)(6).

15

    d. Damages

As discussed above, collateral estoppel can be used for liability, damages, or both. Lowery, 440 B.R. at 923. Here, the damages caused by Defendant through fraud and the violation of the CFAA are not identified. The Final Award and the Superior Court Order total damages for all counts, including counts for breach of contract and negligence, which provide no basis for nondischargeability. Here, because the damages are not allocated by theory of recovery, and not all theories of recovery lead to nondischargeable debts, collateral estoppel does not apply to the amount of Plaintiff's damages. Plaintiff cannot simply have the full monetary judgment declared nondischargeable; rather, only the portion of the monetary award that relates to Defendant's fraud and willful and malicious injury can be excepted from discharge. In re Harrell, 2019 WL 1489541, at *10 (Bankr. N.D. Ga. Mar. 29, 2019).

Further, although there is authority for finding attorney's fees, expenses, and costs awarded as part of a judgment to be nondischargeable, they must stem from the same basis as the nondischargeable debt itself. See In re Kakal, 2019 WL 332705, *5 (Bankr. S.D. Texas Jan. 24, 2019). Here, it has not been shown the extent to which the attorney's fees and costs awarded to Plaintiff arose from the fraudulent and willful and malicious Contract Scheme forming the basis of the nondischargeability claim.

Likewise, while the Court understands that a court must award actual damages in order to also make an award of punitive damages, Lowery, 440 B.R. at 926, the Court is unable to identify whether the punitive damages awarded in the Superior Court Order are based on Defendant's fraudulent and willful and malicious, as opposed to merely reckless, conduct. To authorize the imposition of punitive or exemplary damages under Georgia law, there must be evidence of willful misconduct, malice, fraud, wantonness, oppression, or that entire want of care

which would raise the presumption of conscious indifference to consequences. O.C.G.A. § 51-12-5.1(b).[2] The standards set forth by O.C.G.A. § 51-12-5.1(b) and section 523(a)(6) seem to be congruent, with the exception of the phrase "that entire want of care, which would raise the presumption of a conscious indifference to consequences," which may equate to "reckless disregard." In re Farmer, 17 B.R. 111, 114 (Bankr. N.D. Ga. 1981). The Final Award and the Superior Court Order do not identify on which of the disjunctive parts of the Georgia statute, or combination thereof, the award of punitive damages was based. If the Superior Court Order was based on some of these grounds (i.e., an entire want of care) the debt would not be nondischargeable. See In re Hedd-Williams, No. 09-90923-JRS, 2011 WL 2516503, at *4 (Bankr. N.D. Ga. Mar. 30, 2011); see also In re Watson, 2019 WL 5388061, at *4 (Bankr. N.D. Ga. Oct. 18, 2019). Here, the Final Award and Superior Court Order are ambiguous, and it is not clear whether the award of punitive damages was based on a standard of entire want of care, which is inconsistent with sections 523(a)(2)(A) and (a)(6) of the Bankruptcy Code. Accordingly, additional evidence is needed.

IV. **Conclusion**

Having reviewed the Motion, along with all of the documents in the record, the Court determines the Superior Court Order is entitled to preclusive effect as to Defendant's liability for fraud and violations of the CFAA. That judgment plus the well-pled facts, which are deemed admitted by virtue of Defendant's default, establish a basis for finding Defendant's fraudulent and willful and malicious conduct under the Contract Scheme nondischargeable pursuant to

---

[2] Georgia law provides: "Punitive damages may be awarded only in such tort actions in which it is proven by clear and convincing evidence that the defendant's actions showed willful misconduct, malice, fraud, wantonness, oppression, or that entire want of care which would raise the presumption of conscious indifference to consequences." O.C.G.A. § 51-12-5.1(b).

17

sections 523(a)(2)(A) and (a)(6). The amount of damages attributed to this conduct is unclear, however. Accordingly,

**IT IS ORDERED** that the Motion is **GRANTED IN PART and DENIED IN PART**.

**IT IS FURTHER ORDERED** that the Motion is **GRANTED** as to the Contract Scheme.

**IT IS FURTHER ORDERED** that damages, in an amount to be proven by Plaintiff, relating to the Contract Scheme are nondischargeable pursuant to section 523(a)(2)(A) and 523(a)(6).

**IT IS FURTHER ORDERED** that the Motion is **DENIED** as to the Cyber-Attacker Access.

**IT IS FURTHER ORDERED** that the Court will hold a status conference in this adversary proceeding on **October 20, 2022 at 10:45 A.M.** in **COURTROOM 1403**, UNITED STATES COURTHOUSE, RICHARD B. RUSSELL FEDERAL BUILDING, 75 TED TURNER DRIVE (f/k/a SPRING STREET), S.W., ATLANTA, GEORGIA. The matter will be heard by video conference or in person, at the option of the person appearing. Please review the "Hearing Information" tab on the judge's webpage, which can be found under the "Dial-in and Virtual Bankruptcy Hearing Information" link at the top of the webpage for this Court, www.ganb.uscourts.gov for more information. The hearing will not be rescheduled except by express permission of the Court.

**END OF DOCUMENT**

**Distribution List**

Jeffrey C Morgan
Barnes & Thornburg LLP
3475 Piedmont Road, N.E.
Suite 1700
Atlanta, GA 30305

Christopher J. Daniels
Barnes & Thornburg LLP
3475 Piedmont Road N.E.
Ste 1700
Atlanta, GA 30305

Brian Elvin Wilder, Jr.
204 Estuary Trl
Alpharetta, GA 30005

Jeffrey B. Kelly
Law Office of Jeffrey B. Kelly, P.C.
107 E. 5th Avenue
Rome, GA 30161

Neil C. Gordon
Arnall, Golden & Gregory, LLP
Suite 2100
171 17th Street, NW
Atlanta, GA 30363

Office of the United States Trustee
362 Richard Russell Building
75 Ted Turner Drive, SW
Atlanta, GA 30303